# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON HILLMON, | CV F  05-1225 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| K. MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is represented by Richard Pfeiffer, Esq.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Fresno County Superior Court.  Specifically, on January 6, 1989, Petitioner was convicted of second degree murder and sentenced to a term of fifteen years to life.  (Exhibit A, attached to Answer.)[1]

In the instant petition for writ of habeas corpus Petitioner does not challenge the validity of the state court judgment; rather Petitioner challenges the California Board of Parole Hearings ("BPH") finding him unsuitable for parole following a parole consideration hearing on March 3, 2004.  Petitioner also challenges a previous denial of parole by the Governor of the State of

---

[1] All future references to "Exhibits" are attached to Respondent's Answer, and unless otherwise noted, the pages references are to the page numbers as they appear on the Court's Case Management Electric Filing System.

1  California which occurred on April 25, 2003.  Petitioner contends that each of these decisions
2  denying him parole violated the Fourteenth Amendment because they are not supported by "some
3  evidence."
4        On May 18, 2004, Petitioner filed a petition for writ of habeas corpus in the Los Angeles
5  County Superior Court. (Exhibit E.)  The petition was denied in a reasoned decision on July 14,
6  2004. (Id.)
7        Petitioner filed a petition in the California Supreme Court.  The petition was denied on
8  February 22, 2006, with citations to In re Rosenkrantz, 29 Cal.4th 616 (2002) and In re
9  Dannenberg, 34 Cal.4th 1061 (2005).  (Exhibit F, at 1, Case No. S135044.)
10       Petitioner challenged the Governor's 2003 reversal to the Los Angeles County Superior
11 Court, the California Court of Appeal, Second Appellate District, and the California Supreme
12 Court.  (Exhibit F, at 1-2, 51, 54-59.)  The California Supreme Court summarily denied relief.
13 The California Court of Appeal stated that "[t]here is some evidence to support the Governor's
14 decision to reverse the Board of Prison Term's finding the petitioner was suitable for parole."
15 (Exhibit F, at 51.)  The Los Angeles County Superior Court upheld the denial of parole in a
16 reasoned decision.  The Superior Court found that "giving deference to the Governor's broad
17 discretion in parole matters, the Court concludes that the record contains 'some evidence' to
18 support the Governor's finding that Petitioner is unsuitable for parole. (In re Rosenkrantz (2002)
19 29 Cal.4th 616, 669; see Cal. Code Regs., tit. 15 § 2281.)."  (Exhibit F, at 54 )
20       Petitioner filed the instant federal petition for writ of habeas corpus on September 28,
21 2005. (Court Doc. 1.)  Petitioner filed an amended petition for writ of habeas corpus on April 4,
22 2006. (Court Doc. 6.)  Respondent filed an answer to the amended petition on April 4, 2007.
23 (Court Doc. 26.)  Petitioner did not file a traverse.

## STATEMENT OF FACTS

25       In the early morning hours of July 30, 1985, Petitioner, his co-defendant, and a female
26 friend, went to a hamburger stand and observed several rival gang members.  A few days prior,
27 Petitioner had been beaten by several rival gang members, and Rafael was one of gang members
28 who was present and had beaten him.  Petitioner proceeded to drop off his female friend, then

drove to his co-defendant's house and obtained a handgun. The two then drove back to the hamburger stand, and Petitioner's co-defendant opened fire killing a rival gang member by the name of Lewis. Petitioner fled the scene and did not discover that an individual died until a month later when questioned by police.

(Exhibit B, at 10-12; Exhibit D, Probation Officer's Report.)

DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

4

Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is entitled to the following procedural protections: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, representation by his attorney, and a written decision explaining the reasons that parole was denied.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,'

5

unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added). The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 512 F.3d at 542, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether "some evidence" supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 512 F.3d at 543, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

Article 5, section 8(b) of the California Constitution, allow the Governor to review the decision of the BPH and enables him to affirm, modify, or reverse the decision on the basis of the same factors that the BPH is required to consider. See Cal. Const. art. 5, § 8(b); In re Rosenkrantz, 59 P.3d 174, 210 (Cal. 2002). Accordingly, the Governor's decision to reverse a parole grant is reviewed under the same due process principles utilized to review the BPH's denial of parole.

  A.  Challenge to Governor's Reversal of BPH's 2002 Finding of Suitability

At Petitioner's 2002 hearing, the BPH found that Petitioner was suitable to grant a parole release date. (See Exhibit F at Part (1) pp. 87-129, Part (2) 1-17.) Specifically, the BPH found Petitioner had a stable social history, had substantial participation in self-help and vocational programming, had realistic parole plans including a job offer and family support, positive institutional behavior, demonstrated signs of remorse, and a favorable psychological evaluation with an assessment of a low to moderately low risk of violence if released. (Exhibit F, at Part (2) 12-17.)

In reversing the BPH's finding, Governor Davis found that Petitioner continues to minimize his responsibility by stating that the purpose of obtaining the gun was to hold the rival gang members at bay while he engaged in a fist fight with Rafael; the shooting was carried out in a calculated manner, endangering several individuals, demonstrating an exceptionally callous disregard for human suffering, as Petitioner was the aggressor and drove the shooter to the location; Petitioner has failed to participate sufficiently in self-help programming as it is limited to participation in the National Association of Brothers and Sisters Inside and Out (NABSIO) program; the psychological evaluation of Petitioner's risk of violence as low to moderately low is dependent on, at least, in part the continued abstinence of any substance use; questionable parole plans that include association with his godbrother who sent Petitioner gang photos in prison; and lack of stable social history due to Petitioner's affiliation with gangs since age 14 and numerous convictions as a juvenile and adult. (Exhibit F Part (2) at pp. 22-24.)

As previously stated, Petitioner challenged the Governor's reversal in his petitions filed in the Los Angeles County Superior Court, California Court of Appeal, Second Appellate District,

7

and California Supreme Court. (See Exhibit F, at Unenumerated pp. 1-2, 51, 54-59.)

In denying Petitioner's petition, the Los Angeles County Superior Court held, in pertinent part:

> The Court concludes that the Governor's findings are supported by "some evidence." (*Rosenkrantz*, *supra*, 29 Cal.4th at 667.) The Governor is constitutionally authorized to make "an independent decision" as to parole suitability. (*Id*. at 670.) Accordingly, the Governor may properly find that the commitment offense justifies a finding of unsuitability, even if the Board did not reach such a conclusion.
>
> Of course, it is difficult to image circumstances wherein the taking of a human life would not demonstrate "a callous disregard" for human life. Here, however, Petitioner was not the shooter. The Court notes the decision by the Court of Appeal for the First District in *In re Dannenberg* (2002) 125 Cal.Rptr.2d 458, previously published at 102 Cal.App.4th 95, currently on review to the California Supreme Court, in which the Court of Appeal observed,
>> Some murders are more cruel or callous than others, and it is the Board's duty to distinguish among them when weighing the gravity of an offense to determine an inmate's suitability for parole. (*Id*. at 468-69.)
>
> The Court eagerly awaits guidance on this very important issue. Until such time, however, the Court has no choice but to find that the Governor's findings as to the commitment offense, wherein Petitioner was the driver in a drive-by shooting, is supported by "some evidence." (*Rosenkrantz*, *supra*, 29 Cal.4th at 667.)
>
> The Court, however, rejects the Governor's findings as to Petitioner's parole plans. The Court finds no support in the record for the assertion that Petitioner's godbrother sent him gang photos. Neither the Governor nor the Attorney General cites any evidence in support of this contention.
>
> Further, the psychological report does not support a finding that Petitioner has or has had a substance abuse problem and requires Narcotics Anonymous ("NA"). The statement cited by the Governor is taken out of context, as the psychologist noted Petitioner was not a substance user, but a seller. (*See* November 26, 2002 Parole Hearing Transcript, supra, at 29-33.) In fact, as stated by the psychologist, Petitioner's "*continued* abstinence" is required. (*Id*.) In addition, the Governor's findings as to the Alternatives to Violence Program and Creative Conflict Resolution are without support. First, there is no indication that such programs, or any other similar programs, are available to Petitioner. Second, the psychological report directly contradicts the Governor's assertions, as it states that self-help "should not be considered mandatory" for Petitioner. (*Id*. at 33.)
>
> Finally, the Court finds there is no evidence to support the Governor's contention that Petitioner has an unstable social history. Evidence of Petitioner's prior criminal acts, lack of employment, and incarceration do not necessarily mean that Petitioner has had "unstable or tumultuous relationships with others." (Cal. Code Regs., tit. 15, § 2281(c)(3).) In fact, the evidence, as represented by the letters of support from his godbrother, godmother, and childhood friend, as well as his continued contact with his sisters, tend to show otherwise, that he has "experienced reasonably stable relationships with others." (Cal. Code Regs., tit.

15, § 2281(d)(2).)

    Still, the Governor's findings as to the other factors, namely the commitment offense and Petitioner's expression of remorse, are supported by "some evidence." (*Rosenkrantz*, *supra*, 29 Cal.4th at 667; *see* Cal. Code Regs., tit. 15, § 2281.) Accordingly, the petition is denied.

(Exhibit F, at pp. 54-59.)

The Court of Appeal, Second Appellate District stated "[t]here is 'some evidence' to support the Governor's decision to reverse the Board of Prison Term's finding that petitioner was suitable for parole. (See *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667; see also *In re Dannenberg* (2005) 34 Cal.4th 1061.)" (Exhibit F, at 51.)

The California Supreme Court summarily denied the petition without comment. (Exhibit F, at 2.)

Under AEDPA, this Court is limited to reviewing the circumstances of the commitment offense including his expressions of remorse, as the other factors relied upon by the Governor were found to be unsupported by "some evidence."

Under California law, the commitment offense alone provides a sufficient basis to deny parole. In re Dannenberg, 34 Cal.4th at 1061, 1095 (2005); Cal. Penal Code § 3041(b). In order to find that an offense was committed "in an especially heinous, atrocious or cruel manner, there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the defendant] of the offense for which he is confined. (Cal. Code Reg. tit. 15, § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005). In California, "[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements-i.e., willfulness, premeditation, and deliberation-that would support a conviction of first degree murder." People v. Nieto Benitez, 4 Cal.4th 91, 102 (1992). "Malice, for the purpose of defining murder, may be express or implied. ([Cal. Penal Code] § 188.) It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' ([Cal. Penal Code] § 188; People v. Mattison (1971) 4 Cal.3d 177, 182, 93 Cal.Rptr. 185, 481 P.2d 193.) Implied malice is present "when no considerable provocation appears, or when the circumstances attending the killing

9

show an abandoned and malignant heart." ([Cal. Penal Code] § 188; People v. Mattison, *supra*.)."

As described by the Governor, Petitioner's crime was a classic example of a gang related drive-by shooting. Just days before the shooting, Petitioner was beaten by several rival gang members, one of whom was an individual named Rafael. When Petitioner spotted Rafael at the hamburger stand, he immediately took his female friend home, drove to his crime partner's home and obtained a loaded firearm. Upon arriving back to the hamburger stand, Petitioner's crime partner immediately began shooting several shots at an occupied vehicle striking and killing an individual named Lewis. Thus, Petitioner's intended target was not even the ultimate victim.

As found by the Governor, Petitioner continues to minimize his culpability by claiming that he intended only to engage in a one-on-one fist fight with Rafael, and the gun was merely to hold others at bay during the fight. However, the evidence supports the Governor's finding that even if that was Petitioner's belief, Petitioner did nothing to stop the shooting as it was occurring or thereafter. Petitioner did not dispute that several shots were fired, he immediately fled the scene and denied responsibility for his actions when contacted by police a month later. Based on these circumstances, the Governor identified more than the minimal requirements for a conviction of second degree murder and "some evidence" supports the finding that the circumstances of Petitioner's commitment offense demonstrate that his release unreasonably endangers public safety.

The Court acknowledges that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." The Ninth Circuit reaffirmed its holding in Biggs in the case of Irons v. Carey, where it stated that although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior

conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d at 853, *citing* Biggs, 334 F.3d at 916. This point was recently restated in Hayward v. Marshall, 512 F.3d 536.  In both Biggs and Irons, the Ninth Circuit upheld the denials of parole based solely on the commitment offense, because in each of these cases the prisoner had not yet served the minimum term of his sentence. In Hayward, however, the Ninth Circuit reversed the denial of parole finding the commitment offense, in light of the extraordinary circumstances of the case, no longer had predictive value regarding the prisoner's suitability for parole.  In the instant case, at the time of the Governor's 2003 reversal, Petitioner had only been incarcerated 14 years of his 15 years to life sentence, and the concerns expressed in Biggs and its progeny are not present here.

The last reasoned state court opinion of the Los Angeles County Superior Court did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

     B.  Challenge to BPH's 2004 Finding of Unsuitability

Petitioner contends that the BPH's finding of unsuitability for parole at his 2004 hearing was not supported by "some evidence" as it was based upon the same evidence a prior panel found him suitable for parole.

In finding that Petitioner was not suitable for parole at his 2004 hearing, the BPH relied upon several factors including, the circumstances of the commitment offense, inexplicable motive for the crime, prior criminal history, unstable social history, and insufficient participation in self-help programming. (Exhibit B, at 84-88.)[2]

The first factor the BPH relied on was the fact that the second degree murder offense was carried out in a calculated manner, demonstrating a callous disregard for the community's safety

---

[2] The page number references to Exhibit B correspond with the pages numbers as reflected in the transcript of the Board's hearing, and not as they appear on the Court's Case Management Electronic Filing System.

11

aa well as fellow human beings.[3]  (Exhibit B, 84; Cal.Code Regs. tit. 15, § 2402(c)(1)(B), (C).) This finding is supported by "some evidence," as the shooting was gang related and took place in a community setting.  After spotting a rival gang member who had beaten him a few days before, Petitioner drove to his crime partner's home to obtain a gun and returned to the location where his partner immediately opened fire killing a rival gang member by the name of Lewis.  The offense was clearly calculated and demonstrated a callous disregard for human suffering.

The Court recognizes that at the time of the 2004 hearing, Petitioner had served two months beyond his minimum 15-years-to-life term; however, on this record, even if this were the sole factor, the denial did not result in a per se violation of due process as the Ninth Circuit has not provided a concrete standard as to when (and under what exact circumstances) the sole reliance on the unchanging circumstances of the commitment offense rises to the level of a due process violation.[4]

As previously stated, the BPH found that the motive for the offense was inexplicable. (Exhibit B, at 84; Cal.Code Regs. tit. 15, § 2402(c)(1)(E).)  Based on a review of the record, this finding is not supported by "some evidence."  As stated in In re Scott, 119 Cal.App.4th 871 (2004), the Court explained the meaning of an inexplicable motive as "one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose.  A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous." Id.

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered include:
 (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
 (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
 (C) The victim was abused, defiled or mutilated during or after the offense.
 (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
 (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

[4] Nor has the United States Supreme Court spoken on the issue of whether and when the denial of parole based solely on the continued reliance of the circumstances of the commitment offense results in a due process violation, and therefore there is no clearly established Supreme Court authority on this issue.

at 892-893.  Petitioner has consistently maintained, and it appears undisputed, that his motive was to seek revenge against a rival gang member who had beaten him just days prior.  Therefore, although the motive may arguably be "very trivial", on this record, it was not "inexplicable."

With regard to Petitioner's social history, he was on parole at the time of the instant offense, he had a prior prison term, and two prior CYA terms.  (Exhibit B, at 84; Cal.Code Regs. tit. 15, § 2402.)  Petitioner suffered a prior conviction for assaulting another man with the intent to inflict serious injury.  (Id. at 85.)  He failed previous grants of probation and parole.  In addition, Petitioner became associated with a gang at the young age of 14.  (Id.)  Accordingly, "some evidence" supports the BPH's finding that Petitioner had an unstable social history taking into consideration his prior criminal record and association with the gang.

The BPH found that Petitioner had not gained sufficient participation in self-help programming to address any potential substance abuse issues.  The BPH pointed out the ambiguity and/or uncertainty in the psychological report which, on the one hand, stated that the risk assessment was low to moderate, but on the other hand, conditioned such risk as dependent on the abstinence from any substance abuse.  (Exhibit B, at 86.)  The BPH ordered a new psychological report to address whether Petitioner would benefit from participation in "substance abuse self-help programs such as AA or NA or some other kind of a related program, self-help program, prior to [] being found suitable."  (Id. at 86-87.)

In addition, the BPH considered the factors supporting Petitioner's release including solid parole plans, substantial vocational training, and disassociation with the gang life. (Exhibit B, at 88; Cal. Code Reg. tit. 15, § 2402(d).)  However, on balance, these positive aspects did not outweigh the factors of unsuitability.

In sum, the Board thoroughly considered all relevant evidence in this case and carefully balanced and assessed the various factors. Those BPH's findings that Petitioner present poses an unreasonable risk to public safety were supported by at least "some evidence",  and it cannot be said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence before the state court."

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **fifteen (15)** days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within **five (5)** court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 19, 2008**               /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE